2022 IL App (4th) 210498
NO. 4-21-0498

FILED
October 4, 2022
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| BYRON JOSHA MERRIWEATHER, | ) | No. 04CF840 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John C. Costigan, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment and opinion.

## OPINION

¶ 1    On remand from this court, the McLean County circuit court held a new sentencing hearing for defendant, Byron Josha Merriweather, a juvenile offender, and sentenced him to 35 years' imprisonment. Defendant filed a motion to reconsider his sentence, which the court denied. Defendant appeals, asserting (1) the court improperly applied the mitigating sentencing factors for juvenile offenders contained in section 5-4.5-105(a) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4.5-105(a) (West 2018)) and (2) he did not receive effective assistance of counsel. We affirm.

¶ 2                          I. BACKGROUND

¶ 3    In September 2004, a grand jury indicted defendant on the offense of first degree murder (720 ILCS 5/9-1(a)(1) (West 2002)) in connection with the shooting death of Steven

McDade in June 2003. Defendant was born in June 1985. At the time of the shooting, he was 10 days short of his eighteenth birthday and a member of the Vice Lords gang. The shooting took place on Father's Day in a crowded Miller Park in Bloomington, Illinois. The evidence indicated a brawl broke out between the Vice Lords and Gangster Disciples, which ended in the shooting of McDade. After the incident, defendant told Rhonda Williams, a police informant, he had shot McDade. Williams wore a wire and taped some of defendant's statements about the McDade shooting. A lengthy summary of the evidence presented at defendant's trial is set forth in our initial order in this case. *People v. Merriweather*, 378 Ill. App. 3d 1139, 955 N.E.2d 192 (2008) (table) (unpublished order under Illinois Supreme Court Rule 23). In February 2006, a jury found defendant guilty. In May 2006, the trial court sentenced him to 70 years in prison, which included a 45-year term, plus a mandatory 25-year firearm enhancement.

¶ 4        Defendant appealed and argued the following: (1) the evidence was insufficient to convict him because the witnesses against him were not credible, (2) the trial court erred in allowing the jury to hear about his juvenile record, (3) the court denied his right to a fair trial when the State presented a large amount of evidence alleging he committed other uncharged and gang related acts, and (4) he received ineffective assistance of counsel. In March 2008, this court affirmed defendant's conviction and sentence. *Merriweather*, 378 Ill. App. 3d 1139.

¶ 5        In December 2008, defendant filed a *pro se* petition for postconviction relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2008)), asserting ineffective assistance of counsel based on, *inter alia*, counsel's failure to present evidence of another suspect. Defendant attached to his petition his November 2008 affidavit, in which he denied he committed the murder at Miller Park. The trial court dismissed defendant's postconviction petition at the first stage of the proceedings. Defendant appealed, and this court affirmed the dismissal. *People v.*

*Merriweather*, 403 Ill. App. 3d 1116, 993 N.E.2d 154 (2010) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 6 In February 2013, defendant filed a *pro se* motion for leave to file a successive postconviction petition, stating a claim of actual innocence based on newly discovered evidence. The trial court denied the motion for leave to file a successive postconviction petition, and defendant appealed. On appeal, defendant argued (1) this court should vacate his *de facto* life sentence and remand for resentencing and (2) the trial court erred in denying him leave to file a successive postconviction petition. This court found defendant forfeited his *de facto* life sentence argument because he raised it for the first time on appeal. *People v. Merriweather*, 2017 IL App (4th) 150407, ¶ 14, 80 N.E.3d 127. However, we vacated the trial court's denial of defendant's motion for leave to file a successive postconviction petition and remanded the cause with directions for the trial court to rule on defendant's motion to supplement the record and for any further proceedings that were warranted. *Merriweather*, 2017 IL App (4th) 150407, ¶ 30.

¶ 7 While the appeal was pending on defendant's first motion for leave to file a successive postconviction petition, he filed a second motion for leave to file a successive postconviction petition in August 2016. In his second motion, defendant argued his 70-year sentence violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) because it was a *de facto* life sentence and the sentencing court failed to take into account the considerations required by *Miller v. Alabama*, 567 U.S. 460, 483 (2012). The trial court denied defendant's second motion for leave to file a successive postconviction petition, finding defendant failed to establish prejudice because *Miller* applied to mandatory life sentences, not discretionary ones. Defendant appealed the denial of his second motion for leave to file a successive postconviction petition, and this court vacated defendant's 70-year sentence and remanded the

- 3 -

cause for a new sentencing hearing consistent with section 5-4.5-105 of the Unified Code (730 ILCS 5/5-4.5-105 (West 2018)). *People v. Merriweather*, No. 4-17-0312 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c))

¶ 8        On remand, the trial court ordered a new presentence report and approved funds for defense counsel to retain a mitigation expert. At the resentencing hearing, the State asked the trial court to take judicial notice of the prior proceedings and presented the original victim impact statement by McDade's family and defendant's November 2008 affidavit. Defendant testified on his own behalf and presented testimony from the following: (1) Mary Duran, a former McLean County jail correctional officer; (2) Deborah Merriweather, defendant's mother; (3) Ronald Freman, defendant's father; (4) Nikkita Merriweather, defendant's sister; (5) Savion Smith, defendant's brother; and (6) Bertram Givan, defendant's long-time friend. In addition to the testimony, defendant presented (1) reference letters, (2) an August 2020 forensic psychiatric evaluation by Terry Killian, (3) a brochure for the nonprofit organization defendant wanted to start, (4) defendant's October 2020 certificate of completion for a peer mentoring skills training correspondence course, (5) defendant's Lake Land Community College report card, and (6) defendant's August 2011 request for protective custody.

¶ 9        Duran testified she worked at the McLean County jail from May 2019 to December 2020. She observed defendant was always respectful and cooperative with jail staff. She also noted defendant had a good attitude towards work and was disappointed when he was switched out of the job to allow others to have the position. Duran further testified younger inmates seemed to look up to defendant and he appeared to keep the peace among inmates. On one occasion, she had to give defendant a verbal warning for talking through the glass in the recreation yard, and he did not do it again after that.

¶ 10          Deborah testified defendant had matured in prison and was a totally different person. Defendant expressed remorse for what he had done and noted he had learned his lesson. Defendant told Deborah he wanted to help others to not make the mistake he made. Deborah believed defendant did not pose a danger to the public because he had matured and learned a lot in prison. Defendant could live with her in Belleville, Illinois, upon his release from prison.

¶ 11          Freman testified he had not been a part of defendant's life until four to six months before the resentencing hearing. He talked on the telephone with defendant two to three times a week, and defendant was very respectful and wanted to do better. Freman was a St. Louis police officer and would be willing to work with defendant and keep him on the right track.

¶ 12          Nikkita testified she had spoken with defendant every day on the telephone for the last six or seven years. Defendant had expressed remorse to her. Defendant had discussed future goals with her and noted he would like to open a center for troubled teens and adults to help them get on a different path in life. Nikkita believed defendant was not a danger or a threat to the public because he did not speak of harming anyone or even speak negatively about anyone. Nikkita viewed defendant as a father figure and wanted him home to help her out.

¶ 13          Smith testified it was rough not having defendant around in person when he was growing up but defendant was still there for him no matter what the situation. Smith explained defendant would always call him and encourage him to be the best person he could be. With defendant's advice, Smith was in a good crowd and finished high school. Smith described defendant as a good mentor and said he owed defendant a debt of gratitude for all his guidance over the years.

¶ 14          Givan testified he had been defendant's good friend for around 25 years and was friends with him at the time of the murder. They had been in the same gang. Defendant was "just

a soldier" in the gang. Givan eventually left the gang and was working at Youth Build McLean County, a vocational program and alternative school for youth. Givan talked to defendant on the telephone at least weekly and more since defendant had been in the county jail. According to Givan, defendant had changed in prison. Defendant denounced the gang and changed his outlook and attitude. Defendant had expressed remorse for his criminal act. Defendant had told Givan he would like the same occupation as Givan, who was a case manager at Youth Build McLean County. Givan believed defendant would be a good counselor to young people. Givan also felt defendant deserved a second chance.

¶ 15　　　　Defendant testified he was now 35 years old. He stopped attending school in the seventh grade. When he was growing up, defendant did not have a father figure and looked up to his older brother, Valentino. Defendant joined the same gang as Valentino at the age of 12 or 13. As a gang member, defendant sold drugs, stole cars, broke into houses, and got into fights. On the day of McDade's murder, defendant was hanging out at various parks. He started drinking hard liquor around noon and smoked marijuana. While defendant was at Miller Park, another gang approached defendant and the other gang members with whom he was hanging out. Defendant noted the gang members he was hanging out with were mostly in their twenties. Defendant and his group left the park to avoid a confrontation. After discussing the situation and continuing to drink, the group decided to return to Miller Park. On the way to the park, another gang member handed defendant a gun. Defendant believed the gun was for protection, and he had no plans to shoot anyone.

¶ 16　　　　At Miller Park, defendant's group just hung out and talked. After five minutes, a crowd of people came towards defendant. The crowd made disrespectful comments and threw bottles at defendant's group. A fight broke out with "[a] lot of people fighting." A couple of

defendant's friends were getting beat up, and defendant kept hearing somebody say "shoot." He heard the word four or five times. Defendant then pulled out the gun and shot it around four times. Defendant believed McDade was a Gangster Disciple.

¶ 17 After the shooting, defendant was in denial about his actions. However, he now takes full responsibility for his actions and would like to apologize to McDade's family. He is very remorseful for what he has done. Defendant would like to redeem himself by starting a nonprofit organization to help teens avoid the mistakes he made. Defendant was transferred out of Menard Correctional Center due to good behavior, and he was able to take college courses at his new correctional center. He would like to complete his associates degree. While in prison, defendant gave his life to God and is now Muslim.

¶ 18 During closing arguments, the State asked the court to reimpose the 70-year sentence. Defense counsel asserted defendant was rehabilitated and a 20-year sentence was appropriate. Defendant made a statement in allocution. He again apologized to McDade's family and took responsibility for his actions. Defendant explained how he was a changed person.

¶ 19 The trial court began its sentencing pronouncement by stating the evidence, arguments, statutory provisions, and case law it considered in determining defendant's sentence. It then stated the following:

"The Court has had a lot of time to think about this sentencing, [defendant], over the last 17 days since our initial hearing, as well as before that point in time. This case presents numerous interesting issues in terms of from [*sic*] a legal standpoint, how to apply the firearm enhancement, but not make certain findings with regard to the *Buffer* case. The minimum sentence was actually five years more than the maximum sentence in the case because the minimum sentence 20 for

- 7 -

murder, the firearm enhancement would equal 45. *Buffer* says unless they make certain findings, the maximum sentence is 40, but I understand *Buffer* also goes on to say the firearm enhancement under this particular situation is discretionary for the Court as well, and I understand that. It's just an interesting legal issue.

The legislature has told me to consider certain factors when issuing a sentence, and I have two overriding considerations. One is to issue the appropriate sentence for the offense that's been committed. That's what society demands, that's what people say is part of my job to issue the appropriate sentence for the crime that's before me. That's one factor I'm considering. The second is to look at rehabilitation and where's rehabilitation fall on things from your standpoint. I'm looking at that as well. So I'm considering all of those factors, and that's where all the testimony has played into everything, from the State, from Mr. Zalcman [(defense counsel)], everything that's been presented. The one thing that I did not read, and purposely did not read, is the sentencing hearing, the transcript from the sentencing hearing from the first sentencing because the Appellate Court told me to re-sentence you, and what Judge Dozier found at that sentencing hearing is what Judge Dozier's findings were, not what my findings were. I have an opportunity, a somewhat unique opportunity as it's been mentioned to now look at things 15 years down the road, 16 years down the road, and see where things are at, something he did not have the opportunity to look at when he was considering things.

Do I see you as a different individual at this point in time than what was before Judge Dozier? I believe so. I see things that probably were not present 18 years ago, a degree of maturity that was not there, and I'm taking that into

consideration when I'm looking at things. I have no doubt that you are a different person than when you were before Judge Dozier and he initiated that initial sentence. I'm encouraged to see the changes that have been made up until this point, and I'm considering certain factors.

So I'm looking at the statutory factors, the legislature, person's age, level of maturity at the time of the offense, including the ability to consider risks and consequences behavior, and the presence of cognitive or developmental disability, or both, if any. I've read Dr. Killion's report. I'm looking at things, you were a minor at the time this happened, you were under 18 years of age, and that's something that I am to consider. You were also ten days prior to your 18th birthday. It wasn't a situation to where you were 15 or 16 years old, which unfortunately we do see folks that age here. You had a few more years under your belt, and quite frankly, where the cases stand, 10 days later, if this would have happened 10 days later after your 18th birthday, there's probably a high degree of chance that sentence from Judge Dozier would have stood because you were over 18. But you were under 18 at the time and that gives me an opportunity to look at things again, and that's what I'm doing.

Whether the person was subject to outside pressure, including peer pressure or negative influences. I've had the opportunity to hear a number of gang cases here in this courtroom. It's something that I deal with on a fairly regular basis. I know that there is certain pressures regarding a gang, being involved in a gang, certain things that people do as being a part of the gang. I understand in this particular situation there was drinking, drugs involved in this situation as well. That's a factor

I am considering. Whether you are a member of the gang or not, still a member of the gang, it's a situation to where I look at it, and from the testimony I hear there are gang members who don't say certain things in this courtroom. They will not say certain things, and you did say them here during the course of the hearing. You let out certain things which does make me believe that probably there is that distancing from the gang that you were involved in at the time. So I do believe there's some distancing there as to the gang issue, but I understand the gang issue is a factor here.

A person's family, home environment, education, social background, including the history of parental neglect, physical abuse, and other childhood trauma. Again, that goes to Dr. Killion's report which I've reviewed, but the Court doesn't see that as being as significant as I do in some cases here. You have people who are involved in your life, opportunities to get on the straight and narrow prior to any of this happening, and a lot of people who had your back at the time, and continue to have your back. It's unfortunate you didn't take advantage of that at the time.

The person's potential for rehabilitation, or evidence of rehabilitation, or both. Again, this goes to the fact that we're down the line a bit in terms of looking at things that I can see some of the rehabilitation that has taken place given the facts of this case, and we're back here on a re-sentencing. The college courses, an A and a B in some tough courses tells me that you had the opportunity and the smarts to get the job done. There's no doubt about that. The certificate of completion that you have, that I'm seeing. The program that you've set up here to go ahead and mentor youths, those are all things here that the Court considers in terms of rehabilitation,

and the evidence of rehabilitation. So I am considering that.

The circumstances of the offense. That is something that is aggravating to the Court. It's aggravating because you left because they took your spot at Miller Park, and rather than just letting it be, you came back, and you came back with a gun to basically re-claim your spot, and that's aggravating to the Court. I understand that somebody gave you the gun on the way back, but it was a situation to where it should have been left, and there was, as Mr. Rigdon [(prosecutor)] indicated, four shots here. The overhear with the statement that was made, I'd do it again, that's concerning to the Court, but again, I understand that was some time ago. I understand there's a lot of water under the bridge since that point in time.

The degree of participation, again, it is—that's aggravating to where the Court sees a degree of participation. There's an acknowledgment that you were the shooter, and it took us a while to get there, but that is acknowledgement.

Whether the person was able to meaningfully participate in your defense, I believe that you were able to meaningfully participate in your defensive. I've seen in some of the post-trial motions there were some claims of ineffective assistance of counsel, but I believe you were able to meaningfully participate in the defense.

The person's prior juvenile criminal history. We have a theft and a burglary, we have a lack of compliance with the probationary terms. You were on juvenile parole at the time this took place for the other juvenile offense. That's aggravating to the Court here when I've look [*sic*] at the situation.

Any other information the Court finds relevant and reliable, including the expression of remorse. I believe your remorse is genuine. I do. It took us a while to

get there as I've mentioned earlier, but when you say you're sorry, when you acknowledge things, I believe you. I believe if it was a situation to where you could take it back, you would. Not only for your standpoint, but I do believe you are thinking of Mr. McDade in terms of what the consequences were to him as a result of this action, and so I believe that as well. So I'm considering that.

When I have looked at the totality of the circumstances, was there immaturity here that played into this offense? I think absolutely there was. I think absolutely. I think when I've looked at the totality of the circumstances here, the *Buffer* case, when I'm looking for things, it says basically 40 is *de facto* life sentence, and I think that *Buffer* gives me guidance here in terms of where I should be looking.

In terms of I don't see somebody who shows irreparable corruption. I don't see that based on the evidence that I have before me. But I also don't see a minimum sentence being appropriate as well. We are here on a third felony. We are here on somebody who's had the opportunity, they were on parole at the time. We have somebody who had the opportunity to walk away from the situation. When you left the park in the first place and you came back, that's aggravating to the Court. We have a situation to where, while I'm not punishing you at all for having a trial, you are perfectly entitled to a trial and to assert your innocence in the case, but we have denial after denial until more recently here to where we have someone finally acknowledging as to what actually happened in the situation. So when I've considered the totality of the circumstances I don't think a minimum sentence is appropriate as well.

When I've looked at the totality of the circumstances and where things are at, the Court considers the sentence of court costs and 35 years in the IDOC as the appropriate sentence."

On March 29, 2021, the trial court entered its written sentencing judgment consistent with the above oral pronouncement.

¶ 20 On April 22, 2021, defendant filed a timely motion to reconsider his sentence, arguing he should be resentenced to 25 years' imprisonment based on the circumstances of his case and his behavior after his original sentence. At an August 10, 2021, hearing, the court denied defendant's motion to reconsider his sentence. The court noted it considered the factors codified in section 5-4.5-105(a) and "indicated what [it] saw was positive and what [it] saw negative in terms of what [it] considered in terms of the sentence that was issued." The court emphasized it looked at the totality of the circumstances.

¶ 21 On September 1, 2021, defendant filed a timely notice of appeal, but it did not accurately describe the appealed judgment. On September 9, 2021, defendant filed a timely amended notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. Mar. 12, 2021), which listed defendant's resentence and denial of his motion to reconsider. See Ill. S. Ct. R. 303(b)(5) (eff. July 1, 2017); R. 606(d) (eff. Mar. 21, 2021). Accordingly, this court has jurisdiction of defendant's appeal under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 22                                        II. ANALYSIS

¶ 23                              A. Juvenile Sentencing Factors

¶ 24 Defendant first contends the trial court improperly applied six of the mandatory sentencing factors set forth in section 5-4.5-105(a) of the Unified Code (730 ILCS 5/5-4.5-105(a) (West 2018)). He recognizes the issue was not properly preserved for appeal and asks us to

consider it under the plain-error doctrine (Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)) or as a claim of ineffective assistance of counsel. The State contends no error occurred.

¶ 25    The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1058 (2010).

We begin a plain-error analysis by first determining whether any error occurred at all. *Sargent*, 239 Ill. 2d at 189. If error did occur, this court then considers whether either of the two prongs of the plain-error doctrine has been satisfied. *Sargent*, 239 Ill. 2d at 189-90. "Under both prongs of the plain-error doctrine, the defendant has the burden of persuasion." *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010). If the defendant fails to meet his or her burden of persuasion, the reviewing court applies the procedural default. *Hillier*, 237 Ill. 2d at 545.

¶ 26    The parties both contend our standard of review for whether the trial court properly applied the section 5-4.5-105(a) factors is *de novo*. See *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 65, 129 N.E.3d 755 (noting whether the trial court relied upon an improper factor at sentencing presents a question of law, which this court reviews *de novo*). To the extent defendant is raising statutory construction contentions in making his argument, that standard of review is correct as to those contentions. See *People v. Smith*, 2014 IL 115946, ¶ 21, 21 N.E.3d 1172. However, defendant essentially argues the circuit court imposed an excessive sentence. See *People*

*v. Johnson*, 2019 IL 122956, ¶ 39, 129 N.E.3d 1239 (noting the defendant raised an excessive sentencing argument when the defendant argued he would have received a lower sentence if the court had not erred in its application of the statute and, thus, erroneously considered statutory factors). A reviewing court will not disturb a defendant's sentence absent an abuse of discretion by the trial court. *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010). "A sentence will be deemed an abuse of discretion where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Alexander*, 239 Ill. 2d at 212 (quoting *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000)).

¶ 27                                    1. *Juvenile Sentencing*

¶ 28          In *Miller*, 567 U.S. at 489, the United States Supreme Court found unconstitutional a sentencing scheme that mandated life in prison without the possibility of parole for juvenile offenders (those under the age of 18), including those convicted of homicide. The *Miller* Court did not foreclose sentencing a juvenile convicted of homicide to life in prison, but it emphasized the judge or jury must have the opportunity to consider mitigating factors before imposing the harshest possible penalty on a juvenile. *Miller*, 567 U.S. at 489. In reaching its holding, the *Miller* Court emphasized the juvenile offender's youth and attendant characteristics must be considered. *Miller*, 567 U.S. at 483. Thereafter, in *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016), the Supreme Court found the *Miller* decision announced a new substantive rule of constitutional law that was retroactive on state collateral review. It also reiterated the *Miller* Court required the sentencing court to consider a juvenile offender's youth and attendant characteristics before determining life without parole was an appropriate sentence. *Montgomery*, 577 U.S. at 209-10. The *Montgomery* Court further explained *Miller* barred life without parole "for all but the rarest of juvenile

- 15 -

offenders, those whose crimes reflect permanent incorrigibility." *Montgomery*, 577 U.S. at 209.

Recently, in *Jones v. Mississippi*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1318 (2021), the Supreme

Court explained the *Montgomery* decision did not require the sentencing court to make a separate

factual finding of permanent incorrigibility to impose a discretionary life sentence.

¶ 29        After the *Miller* decision, the Illinois legislature enacted section 5-4.5-105 of the

Unified Code (730 ILCS 5/5-4.5-105 (West 2016)), which contains a list of mitigating factors

"taken from and *** consistent with *Miller*'s discussion of a juvenile defendant's youth and its

attendant characteristics." *People v. Buffer*, 2019 IL 122327, ¶ 36, 137 N.E.3d 763. Section 5-4.5-

105(a) states as follows:

> "[T]he court, at the sentencing hearing conducted under Section 5-4-1, shall
> consider the following additional factors in mitigation in determining the
> appropriate sentence:
>
> (1) the person's age, impetuosity, and level of maturity at the time of the
> offense, including the ability to consider risks and consequences of behavior,
> and the presence of cognitive or developmental disability, or both, if any;
>
> (2) whether the person was subjected to outside pressure, including peer
> pressure, familial pressure, or negative influences;
>
> (3) the person's family, home environment, educational and social
> background, including any history of parental neglect, physical abuse, or other
> childhood trauma;
>
> (4) the person's potential for rehabilitation or evidence of rehabilitation, or
> both;
>
> (5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West 2018).

¶ 30                              2. *Sentencing in General*

¶ 31        The Illinois Constitution mandates "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. In sentencing a defendant, the circuit court must consider a number of statutory mitigating and aggravating factors. See 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2018). Section 5-4.5-105(a) contains "*additional* factors in mitigation in determining the appropriate sentence" for juvenile offenders. (Emphasis added.) 730 ILCS 5/5-4.5-105(a) (West 2018). Accordingly, section 5-4.5-105(a) does not replace the normal sentencing provisions but supplements them. As with the statutory mitigating factors listed in section 5-5-3.1, not all the mitigating factors may apply in every case. See *People v. Lefler*, 2016 IL App (3d) 140293, ¶ 3, 48 N.E.3d 257 (noting the trial court did not err in finding no statutory mitigating factors applicable to the defendant). Moreover, the trial court need not articulate each factor it considers in rendering the sentence for a juvenile offender, and that omission does not mean the trial court did not consider

all relevant factors. *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 74, 161 N.E.3d 953. "In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Dowding*, 388 Ill. App. 3d 936, 943, 904 N.E.2d 1022, 1028 (2009).

¶ 32        Additionally, in reviewing a defendant's sentence, we note the following:

"A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case. [Citation.] Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. [Citation.] *** If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341; see also *Alexander*, 239 Ill. 2d at 212.

The sentencing range for first degree murder is 20 to 60 years' imprisonment (730 ILCS 5/5-4.5-20(a) (West 2018)). Moreover, "if, during the commission of the offense, the person personally discharged a firearm that proximately caused *** death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court." 730 ILCS 5/5-8-

1(a)(1)(d)(iii) (West 2018). Under section 5-4.5-105(c) of the Unified Code (730 ILCS 5/5-4.5-105(c) (West 2018)), the court has the discretion to impose the aforementioned sentencing enhancement. In his brief, defendant incorrectly argued defendant's sentencing range was 20 to 40 years in prison, citing *People v. Holman*, 2017 IL 120655, ¶ 40, 91 N.E.3d 849, which found *Miller* applied to discretionary sentences, and *Buffer*, 2019 IL 122327, ¶ 40, which held a 40-year sentence was a *de facto* life sentence. However, following *Holman*, the United States Supreme Court rendered the *Jones* decision. As our supreme court has explained, the *Jones* Court found "the eighth amendment allows juvenile offenders to be sentenced to life without parole as long as the sentence is not mandatory and the sentencing court had discretion to consider youth and attendant characteristics but that no factfinding by the sentencer is required." *People v. Dorsey*, 2021 IL 123010, ¶ 40, 183 N.E.3d 715 (citing *Jones*, 593 U.S. at ___, 141 S. Ct. at 1314-15). Our supreme court further noted *Holman*'s holding that *Miller* applied to discretionary sentences was questionable in light of *Jones*. *Dorsey*, 2021 IL 123010, ¶ 41. Under *Jones* and Illinois law, as long as the trial court considers the factors set forth in section 5-4.5-105(a) in exercising its discretion, it may sentence a juvenile offender to a prison term greater than 40 years and not violate the eighth amendment. See *Jones*, 593 U.S. at ___, 141 S. Ct. at 1314-15.

¶ 33                                    3. *This Case*

¶ 34           At the resentencing hearing, the trial court sentenced defendant to 35 years in prison and declined to impose the firearm enhancement. In making that determination, the court addressed all nine factors set forth in section 5-4.5-105(a). In its findings, the court used the term "aggravating" in discussing the following three factors: the circumstances of the offense (730 ILCS 5/5-4.5-105(a)(5) (West 2018)), defendant's degree of participation in the offense (730 ILCS 5/5-4.5-105(a)(6) (West 2018)), and defendant's prior juvenile history (730 ILCS 5/5-4.5-105(a)(8)

(West 2018)). Defendant challenges the trial court's findings those three factors were not mitigating. He also argues the trial court erred in making its findings on the first three section 5-4.5-105(a) factors, which are defendant's age, impetuosity, and maturity at the time of the offense (730 ILCS 5/5-4.5-105(a)(1) (West 2018)); whether defendant was subject to outside pressure (730 ILCS 5/5-4.5-105(a)(2) (West 2018)); and defendant's family, home environment, and educational and social background (730 ILCS 5/5-4.5-105(a)(3) (West 2018)). Defendant acknowledges the trial court properly considered his rehabilitation (730 ILCS 5/5-4.5-105(a)(4) (West 2018)); his meaningful participation in his defense (730 ILCS 5/5-4.5-105(a)(7) (West 2018)); and his remorse (730 ILCS 5/5-4.5-105(a)(9) (West 2018)).

¶ 35　　　　As to the three factors the trial court found were not mitigating, the fact the trial court used the term "aggravating" in making that finding was not improper. The evidence supported a finding those factors were not mitigating in this case, and we find nothing wrong with the trial court's use of the term "aggravating" in expressing that finding. A prior history of delinquency is a statutory aggravating factor (730 ILCS 5/5-5-3.2(a)(3) (West 2018)), and the circumstances of the offense along with defendant's role must be considered under the Illinois Constitution in formulating a sentence (Ill. Const. 1970, art. I, § 11). Thus, unlike in *People v. Royer*, 2020 IL App (3d) 170794, ¶ 29, 190 N.E.3d 817, cited by defendant, the three factors for which the trial court used the term "aggravating" are not solely *Miller* factors. Additionally, section 5-4.5-105(a)(9) of the Unified Code (730 ILCS 5/5-4.5-105(a)(9) (West 2018)) expressly prohibits the trial court from considering as aggravating a defendant's choice, on the advice of counsel, to not express remorse. Unlike section 5-4.5-105(a)(9), the three sections noted above do not contain any language prohibiting the consideration of the factor in those sections as aggravating.

¶ 36　　　　Regarding the first three section 5-4.5-105(a) factors, defendant essentially asserts

the trial court should have given more weight to each factor. However, the court explained why defendant's situation was not as mitigating as those of other juveniles. Moreover, as previously noted, the fact the court did not specifically address every word in a factor does not mean the court failed to consider it. Defendant's argument as to the first three section 5-4.5-105(a) factors amounts to a request for this court to reweigh the evidence and substitute our judgment for that of the trial court.

¶ 37        Here, the trial court considered defendant's youth at the time of the offense and the characteristics of youth, as well as defendant's rehabilitation at the time of the sentencing hearing, and imposed a discretionary sentence half as long as his prior sentence and well below the maximum the trial court could have imposed with a firearm enhancement. Defendant committed a very serious crime. He killed a man he did not know by firing a gun four times at him while the man was part of a brawling mob. The brawling mob was instigated when defendant and his fellow gang members returned to the public park, seeking a confrontation with the other gang. Accordingly, we find defendant's sentence is not excessive, and the court did not abuse its discretion in sentencing defendant to 35 years' imprisonment. Since we have found no error, we need not address plain error.

¶ 38                        B. Ineffective Assistance of Counsel

¶ 39        Defendant also asserts he was denied effective assistance of counsel because defense counsel focused on defendant's rehabilitation while in prison and not on his circumstances at the time of the offense. He also contends defense counsel was ineffective for not objecting to the court's sentencing errors. The State contends defendant did not overcome the presumption of trial strategy, especially given the limitations of the appellate record.

¶ 40        The sixth amendment (U.S. Const., amend. VI) guarantees a defendant the right to

effective assistance of counsel at all critical stages of a criminal proceeding. *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 26, 85 N.E.3d 568. This court analyzes claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To establish ineffective assistance of counsel during sentencing, a defendant must show (1) counsel's performance fell below minimal professional standards and (2) a reasonable probability exists the defendant's sentence was affected. *Hibbler*, 2019 IL App (4th) 160897, ¶ 88. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment. *Evans*, 186 Ill. 2d at 93. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93. "Failure to satisfy either prong negates a claim of ineffective assistance of counsel." *Hibbler*, 2019 IL App (4th) 160897, ¶ 88. When defendant raises a claim of ineffective assistance of counsel for the first time on appeal, our review is *de novo*. *Hibbler*, 2019 IL App (4th) 160897, ¶ 88.

¶ 41        As to the prejudice prong, defendant argues the trial court would have imposed a lesser sentence had defense counsel introduced evidence at the resentencing hearing consistent with *Miller* and section 5-4.5-105(a) and objected when the trial court misapplied and downplayed the mitigating factors set forth in section 5-4.5-105(a). In making this argument, he contends his sentence was only five years below the maximum, which this court has already explained was incorrect. Without any discretionary firearm enhancement, defendant's sentence was 25 years

under the maximum sentence. Moreover, this court has already found the trial court did not err in considering and applying the section 5-4.5-105(a) factors. Further, defendant does not indicate what the additional evidence defense counsel failed to present would have shown. Given the record from the original proceedings in addition to the new testimony, we disagree with defendant that defense counsel focused solely on rehabilitation. The evidence presented at defendant's original trial detailed how defendant was in a gang and how that gang played a role in defendant murdering McDade. Defendant himself testified, and counsel presented the testimony of defendant's mother, father, sister, and brother. Defense counsel introduced evidence defendant's father was not present in his life until recently. Implicit in defendant's mother's testimony was defendant's lack of maturity at the time of the offense. Defendant's sister testified about how defendant was a troubled teen and did not have a lot of guidance. Given the nature of the offense and the existing evidence regarding defendant at the time of the offense, we fail to see how additional evidence regarding defendant's characteristics at the time of the offense would probably result in a reduced sentence, especially given defendant has failed to identify what the additional evidence would show about defendant. Accordingly, we find defendant failed to establish ineffective assistance of counsel.

¶ 42                                III. CONCLUSION

¶ 43           For the reasons stated, we affirm the McLean County circuit court's judgment.

¶ 44           Affirmed.

*People v. Merriweather*, 2022 IL App (4th) 210498

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 04-CF-840; the Hon. John C. Costigan, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Joshua M. Bernstein, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Don Knapp, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |