NOTICE
Decision filed 01/09/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220671-U

NOS. 5-22-0671, 5-22-0672 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | Nos. 19-CF-832, 19-CF-833 |
| | ) | |
| JOHN DAVIS III, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held:*  In this direct appeal, the defendant's 16-year sentence is affirmed as the record demonstrates the trial court considered the required mitigating factors for juveniles when sentencing the defendant. The defendant forfeited any argument that his 16-year sentence violated the eighth amendment to the United States Constitution or the Illinois Constitution's proportionate penalties clause by failing to cite relevant authority.

¶ 2    The defendant, John Davis III, appeals his sentence, after a jury trial in the circuit court of St. Clair County, for the offenses of aggravated unlawful use of a weapon and aggravated battery with a firearm. The defendant did not appeal his convictions. For the following reasons, we affirm the defendant's sentence.

1

¶ 3                                    I. BACKGROUND

¶ 4      On June 7, 2019, in St. Clair County case number 2019-CF-832, a grand jury indicted the defendant for the May 17, 2019, aggravated battery with a firearm of Jasmine Bradley; aggravated discharge of a firearm at an occupied vehicle; and aggravated unlawful use of a weapon, a handgun, after being adjudicated delinquent for aggravated battery.

¶ 5      On the same day, in St. Clair County case number 2019-CF-833, a grand jury indicted the defendant for the May 27, 2019, aggravated battery with a firearm of Jamond Bradley and aggravated unlawful use of a weapon, a handgun, after being adjudicated delinquent for aggravated battery. The defendant was 17 years old at the time of the aforementioned offenses.

¶ 6      The trial court granted the prosecution's motion to join the cases. The matters proceeded to a jury trial which began on April 26, 2021. The following evidence was adduced at trial.

¶ 7      In May 2019, the defendant was dating 16-year-old J.G. Tension existed between the defendant and J.G.'s family. On May 17, 2019, J.G.'s sister, Jasmine Bradley, was driving her car to her grandmother's house. Along the way, she encountered the defendant, who was on foot. Jasmine testified that when she encountered the defendant, he "flipped [her] off" and called her a "b***." She then proceeded to her grandmother's house. When she left her grandmother's house, J.G. was with her grandmother, as well as her cousin, Naja Johnson.

¶ 8      After leaving her grandmother's house, Jasmine again encountered the defendant. She testified that she pulled her car off the road by the closed gate of a tow yard and onto the sidewalk in front of the defendant. She exited the car and "had words" with the defendant. She testified that the defendant threw something at her, and she picked it up. She then went to the trunk of her car, which she testified was broken so that it never closed, to retrieve a jacket. She then got back into her car in the front passenger seat, as Naja was now driving. As Naja was starting to drive away,

2

"the car was shot up." Jasmine testified that the defendant was behind the car when the gunshots occurred. Following the gunshots, Jasmine felt blood running down her neck and thumb, and she said her entire left arm was throbbing. She proceeded to Touchette Regional for medical treatment. A video of the shooting was played for the jury.

¶ 9    The defendant testified that as he was on foot, Jasmine blocked his path with her car. He testified that there was yelling, and he threw a juice bottle at her car. He testified that as he was walking away, he saw Jasmine go to the trunk and get something that was wrapped in a blanket-like object. He testified that he thought there was "[a] possibility it could have been a gun or a harmful weapon that could harm me." The defendant stated that as he was walking, the car was traveling in his direction and then it stopped. He testified that when the car stopped that he thought "[t]hat they were fixin' to harm me, shoot me, do something. I don't know." At that point he testified that he "[p]ulled [his] gun out and started shooting." He fired three or four shots and then went to his aunt's house. He did not contact the police.

¶ 10    On May 27, 2019, Jamond Bradley, J.G.'s brother, was shot by the defendant. Jamond testified that he had walked from his grandmother's house to the nearby store that was approximately three houses away. He saw the defendant outside of the store. Jamond testified that the defendant was talking to him, like he wanted an argument or something, but Jamond ignored him and continued into the store. Jamond testified that as he walked out of the store, he heard a gun cock. Jamond testified that after hearing the gun cock, "I stopped, and I turned and looked at [the defendant]. And I said, you're not a shooter. He pointed the gun at me and shot me." Jamond testified that he saw the defendant shoot him, and he was shot on the right side of his torso/chest. Then, Jamond ran towards his house. As he turned and ran, he heard three or four more shots. Jamond testified that he never threatened the defendant. Jamond was transported to the hospital.

3

He underwent surgery and was hospitalized for one week. A surveillance video of this shooting incident was also played for the jury.

¶ 11    The defendant testified that he was at the store on May 27, 2019, waiting to meet J.G. As he was waiting at the store, he saw Jamond. He testified that no words were exchanged between himself and Jamond before Jamond entered the store. The defendant testified that as Jamond exited the store, they made eye contact with one another. Then the defendant said the following exchange occurred: "He stated to me—he was like, you ain't no shooter. I got some shot [*sic*] s*** for your a***. He said it. I just ignored it. He said it again." The defendant testified that then Jamond was walking and "he disappeared behind the dumpster for a second." Then he testified as follows to questioning by his attorney:

"THE WITNESS:[Jamond] come [*sic*] back from behind the dumpster, and I just panicked. I panicked because, first of all, he saying these things that he just said to me. And then I see that his hand was right there by his waistline. And like I said earlier, from my street knowledge, if your hand is right there by your waistline, that's considered you holding onto a gun, as they call it clutching.

Q. (By defense counsel) Did he make any—did he make any movement that led you to believe he was going to do something?

A. I mean, first of all, he disappeared behind the dumpster. That's the first thing. Then he just come back, and all I seen was his shoulder come up first. And I just panic. I went with my instincts and shoot because I'm thinking that he fixin' to shoot me.

Q. How many times did you shot—did you shoot?

A. Between three, five shots.

Q. What did you do then?

4

A. I walked away. Sped walk off."

¶ 12     For proof on the aggravated unlawful use of a weapon counts, the parties stipulated that the defendant had previously been adjudicated a delinquent minor for an offense that if committed by an adult would be a felony charge.

¶ 13     In St. Clair County case number 2019-CF-832, the jury convicted the defendant of aggravated unlawful use of a weapon and acquitted him of the aggravated battery with a firearm of Jasmine and aggravated discharge of a firearm. In St. Clair County case number 2019-CF-833, the jury convicted the defendant of the aggravated battery with a firearm of Jamond and aggravated unlawful use of a weapon.

¶ 14     The State filed a motion for hearing to determine whether the defendant should be sentenced as an adult in case number 2019-CF-832 for the Class 4 felony of aggravated unlawful use of a weapon. The trial court granted the State's motion and determined that adult sentencing was warranted.

¶ 15     The defendant's sentencing hearing was conducted on July 20, 2021. At the sentencing hearing, the State offered the following evidence in aggravation. The State requested that the trial court take judicial notice of the presentence investigation report, specifically the defendant's criminal history that included the following: "at the time of the offense the defendant was on probation for 18-JD-98, 18-JD-93 and specifically that 18-JD-98 was a Class 3 aggravated battery for which he was on felony juvenile probation for." Additionally, there were two pending cases in 18-JD-224 and 18-JD-257.

¶ 16     The State called Officer William Kenny to testify regarding 18-JD-224. Kenny testified that in 2018 he was working for the Cahokia Police Department as a law enforcement officer. On October 21, 2018, Kenny received a complaint of shots fired at the intersection of Westwood and

5

Baldwin. Kenny proceeded to the intersection and identified three of the four suspects matching the description provided by the complainant. Kenny and Officer Collins stopped the individuals and began to investigate. When Kenny and Collins exited their vehicle and instructed the individuals to place their hands on the hood of Collins' car, an individual, later identified as the defendant, did not comply and attempted to run from the scene. Kenny gave chase to the defendant. Once the chase ended, the defendant advised he had a gun in his backpack. Kenny searched the defendant and located a .40-caliber Smith & Wesson, with an extended magazine, with a live round in the chamber and two rounds in the magazine, in the backpack.

¶ 17 As further evidence of aggravation, the State moved to readmit for the purposes of sentencing the recording of the phone call that was made from the defendant to his mother while he was in jail. The defendant asked his mother to contact a family member of a juror.

¶ 18 Defense counsel offered the following evidence in mitigation. The defendant's sister, Johneesha Davis, testified about growing up with the defendant. She testified that they grew up without a father figure. Additionally, "after the whole rape situation happened, it just—you know, it just took a turn for the worst for him. Like he just rolled with the wrong crowd."

¶ 19 The defendant's mother, Diana Jones, also testified. The defendant was the eldest boy of her six children. She elaborated that her husband, the children's stepfather, raped the defendant's sisters in 2012. Jones testified that she knew the defendant needed help as a result of the situation, but that she prioritized his sisters. She testified that she knew what her son did was wrong, but that he "never got the proper tools that he needed to control his anger or deal with his emotions, keeping everything balled up." She also testified that the man she dated after the incidents with the stepfather was physically abusive to her and that the defendant witnessed this.

¶ 20    Jones also testified that Lonnie Johnson, the pastor of Shekinah Glory Family Life Center, prepared a letter on behalf of the defendant. The court noted this as part of the record, as the letter had not been received via mail.

¶ 21    The State argued the trial court should consider the following factors in aggravation: the conduct caused or threatened serious harm, the defendant has a history of prior delinquency and criminal activity, a sentence in the Department of Corrections on the higher end of the spectrum is necessary to deter others from committing the same crime, and that the defendant was on probation for a felony offense at the time he committed this particular offense.

¶ 22    The State noted that it did not want to minimize the fact that the defendant's sisters were victims of serious crimes but argued that the defendant should not get a "pass to victimize or re-victimize other people in the future" because of what happened to his sisters. The State acknowledged that the defendant had a rough life, but that it does not excuse him for trying to take the lives of other people. The State requested a sentence of 25 years, to be served at 85%, for the aggravated battery with a firearm conviction and 3 years, to be served at 50%, for the aggravated unlawful use of a weapon conviction.

¶ 23    Defense counsel argued that when sentencing the defendant, the most important thing to consider is that the defendant was a 17-year-old kid when the offenses took place. Defense counsel argued that the defendant's childhood should be considered as well as the fact that he has been prescribed medication for major depressive disorder. He argued that the defendant could still be rehabilitated. Defense counsel requested that the defendant be sentenced on "the lower end of the sentencing range."

¶ 24    The defendant made a statement in allocution. At which time he apologized for what he did to Jasmine and Jamond and their families. He also apologized to his own family.

¶ 25    The trial court announced the defendant's sentence as follows:

"THE COURT: I reviewed the presentence investigation, also considered the testimony presented by the State in aggravation and by Mr. Liefer on behalf of Mr. Davis in mitigation.

In aggravation I find that Mr. Davis has a prior history of delinquency. Specifically, the firearm, the possession of firearm over the course of a couple of years at least prior to the shootings that led to this Indictment—I hear over and over again from individuals who live in certain areas of our community and our state and in our country about the dangerous nature of being on—in some of these neighborhoods and oftentimes the justification for individuals, citizens in the community, to arm themselves without following the rules. And if we don't have rules, it leads to chaos.

You know, Mr. Davis, you had been before judges in this courthouse, juvenile court judges. You had been given opportunities. And it's—I would not be doing my job if I didn't recognize that despite the opportunities that you had to escape serious prosecution—you were put through the juvenile court system with an opportunity—because as Mr. Liefer says, the whole—the overriding theory of the juvenile court system is to recognize that individuals who are adjudicated through that system do not have mature minds. They have not had the ability to live their lives to a sufficient extent to be fully accountable in an adult way for what they've done. And that's the system, and that's the process that you were going through.

And I don't have any idea what was going on in your mind during the course of these days when these two incidents occurred. But it's clear that you armed yourself with a gun at a time when you knew that you were violating the law when you did that.

8

The jury found in the case relating to Jamond that there was no self defense. You testified that you thought he might shoot you. I guess I understand that, you know, by some—or that he might harm you. I guess you thought that he might be armed or that he was going to be angry at you because of what had happened a week or more later [*sic*] with regard to his sister. I mean it makes sense to me that he wouldn't be happy with you.

But the jury heard all of that. And I think—I think they got that right. There was no—there was no self defense. I felt it was important that the jury considered it. It was right—it was right for you to have your trial, to have your day in court and explain to them, and that's why we have jury trials.

[The State] is right in that it's dangerous. You're dangerous. I don't—I mean you don't—as you sit there now, you're not. But whatever has happened—and I do know what happened to your family. I know very well. I remember your mother. I remember your sisters. And that's horrible. But it doesn't rise to a level—and I know that you're not saying that. But it is—and I know that Mr. Liefer is not saying that. But it puts the whole thing into context. But it doesn't justify what happens years later. But it does give some level of understanding as to why you were in a—perhaps why you were in a state of mind that you were in. But your reaction to it and the violence that you perpetrated and the potential for future violence is a grave concern.

I mean the sentencing code gives me a lot of flexibility. The minimum is six. The maximum is thirty.

In looking at the juvenile court records—it's only speculation. But it may have—it may have been to your benefit to have received a stiffer sentence in the juvenile court

system. It may have prevented what happened later in your life that brings us into court here today. I don't know. That's just speculation.

I do feel that a sentence, a significant sentence to the Department of Corrections is appropriate for the protection of the public. And based upon your criminal history, I feel it's incumbent upon me to issue a stiff sentence.

For the offense of aggravated battery/discharge of a firearm in case number 19-CF-833, Count 1 of the Indictment, I sentence you to 18 years in the Illinois Department of Corrections followed by three years mandatory supervised release. That sentence will be served at 85 percent.

And you get credit for time served. ***

All right. On the other two counts in case number 19-CF-833 I sentence you to three years in the Illinois Department of Corrections. Those sentences will be concurrent with each other and also concurrent with the sentence for the Class X felony of aggravated battery by discharge of a firearm.

For the sentence for the Class 4 felony in 19-CF-832, I sentence you to three years in the Illinois Department of Corrections.

All of those Class 4 felonies will be followed by one year mandatory supervised release. But the sentence will be consumed or subsumed by the Class X felony sentence.

And the sentence for the Class 4 felony in 19-CF-832 will also be concurrent with the sentences in 19-CF-833."

¶ 26 On July 30, 2021, defense counsel filed a motion to reconsider the defendant's sentence. Defense counsel argued that the trial court did not give proper weight to the mitigating factors existing in the case and that the court did not consider all sentencing alternatives available. The

defendant's original counsel passed away, and new counsel was appointed to represent the defendant. New defense counsel adopted the motion to reconsider sentence.

¶ 27 On September 20, 2022, a hearing was held on the defendant's motion to reconsider his sentence. After considering the arguments of counsel, the trial court stated as follows:

"THE COURT: I reviewed the transcript before you came in here. And [defense counsel] is right in citing some of the things that happened to you.

And I know that everything doesn't happen in a vacuum. There are a lot of factors that went into the type of person you were on the day in question when these offenses took place. And, specifically, he talks about your family. I considered that at that time of the original sentencing.

The maximum term that I could have sentenced you to was 30 years. I felt that there was significant aggravation, as I said at the time of sentencing, to justify and support a significant sentence to the Department of Corrections. And, likewise, there was some mitigation also. And I considered that in arriving at the number.

But reconsidering everything, which I am required to do under the rules, and I am doing that, I am going to reduce your sentence to 16 years on the Class X felony in 19-CF-833. That was Count 1. That will be served at 85 percent. That will be followed by three years of mandatory supervised release.

The sentences on the other two counts of conviction will not be modified."

¶ 28 The defendant filed a timely notice of appeal.

¶ 29                                    II. ANALYSIS

¶ 30 On appeal, the defendant is only challenging his sentence. The defendant's brief argues that "Davis's 16-year sentence reflects the trial court's failure to properly apply [the] juvenile

11

sentencing factors. Indeed, the trial court at sentencing did not mention section [5-4.5-105(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-105(a) (West 2018))] and followed adult sentencing procedures to punish Davis." Further, the defendant contends that his sentence is excessive under the eighth amendment to the United States Constitution and proportionate penalties clause of the Illinois Constitution. The defendant raises these issues for the first time on appeal and asks this court to review them under the plain-error doctrine.

¶ 31    The State argues that the defendant is unable to establish an error occurred, a prerequisite to applying the plain-error doctrine. Additionally, the State argues the defendant is unable to establish that his sentence violates the eighth amendment or the proportionate penalties clause.

¶ 32    A defendant may bypass normal forfeiture principles under the plain-error doctrine. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). A reviewing court will apply plain error when:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

The first step of plain-error review is determining whether an error occurred. *Thompson*, 238 Ill. 2d at 613.

¶ 33                    A. Sentencing Individuals Under the Age of 18

¶ 34    The defendant argues the trial court did not apply the juvenile sentencing factors announced in *Miller v. Alabama*, 567 U.S. 460 (2012), *People v. Holman*, 2017 IL 120655, ¶ 46, and codified in section 5-4.5-105 of the Code (730 ILCS 5/5-4.5-105 (West 2018)) when sentencing him. As a

12

result, the defendant argues his sentence is excessive. On appeal, we will not reverse a sentence unless the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000).

¶ 35    The so-called *Miller* factors are as follows:

"(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." (Internal quotation marks mitted.) *People v. Lusby*, 2020 IL 124046, ¶ 34.

Illinois has codified these factors in section 5-4.5-105 of the Code, which requires the trial court, when sentencing an individual who was under 18 years of age at the time of the commission of the offense, to consider the following factors in mitigation:

"(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West 2018).

¶ 36   When sentencing a defendant, the trial court must consider a number of statutory mitigating and aggravating factors. See *id.* §§ 5-5.3.1, 5-5-3.2. The section 5-4.5-105 factors listed above are additional factors the trial court must consider when sentencing someone under the age of 18. *People v. Merriweather*, 2022 IL App (4th) 210498, ¶ 31. Not all mitigating factors apply to every case. *Id.* The "trial court need not articulate each factor it considers in rendering the sentence for a juvenile offender, and that omission does not mean the trial court did not consider all relevant factors." *Id.* "In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009).

¶ 37   In this case, the trial court did not explicitly state that it was considering the factors in mitigation listed in section 5-4.5-105. However, the record reveals the trial court considered the factors applicable to juveniles such as the defendant.

¶ 38   The trial court noted on the record, *inter alia*, that it was considering the presentence investigation. As noted by the defendant in his brief, the presentence investigation report stated that the defendant left high school in the tenth grade. The defendant had worked as a cook at a

14

local restaurant. The defendant was treated for depression and anxiety in 2018 and while in jail. The defendant reported daily use of cannabis and ecstasy prior to his arrest. The trial court heard from the defendant's mother and sister regarding his life growing up. They testified regarding the defendant's sisters being victims of serious crimes. The trial court specifically mentioned some of the foregoing when sentencing the defendant. As evidenced in the transcript of the sentencing hearing, the trial court did consider the defendant's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma, pursuant to section 5-4.5-105(a)(3) of the Code (730 ILCS 5-4.5-105(a)(3) (West 2018)).

¶ 39 The trial court was well aware that the defendant was 17 years old at the time of the offenses. The trial court considered the arguments of counsel. Defense counsel's argument at the sentencing hearing began by asserting that the most important thing to be considered was that the defendant was a 17-year-old kid. Accordingly, the trial court considered the defendant's age pursuant to section 5-4.5-105(a)(1) of the Code (*id.* § 5-4.5-105(a)(1)).

¶ 40 Further, the transcript reveals the trial court considered the circumstances of the offenses and the defendant's prior juvenile criminal history. Thus, the trial court also considered section 5-4.5-105(a)(5) and (8) of the Code (*id.* § 5-4.5-105(a)(5), (8)).

¶ 41 We disagree with the defendant's assertion that because the trial court did not specifically mention the *Miller* factors nor section 5-4.5-105, the trial court did not consider these factors. "If the record contains evidence of mitigating factors, we presume that the court considered this evidence unless there is 'some indication, other than the sentence imposed, to the contrary.' " *People v. Weiser*, 2013 IL App (5th) 120055, ¶ 31 (quoting *People v. Tye*, 323 Ill. App. 3d 872, 890 (2001)). We find that no error occurred, and thus plain-error review will not be applied.

15

¶ 42        B. Eighth Amendment and Illinois Proportionate Penalties Clause

¶ 43    The defendant argues, for the first time on appeal, that his sentence violated the eighth amendment of the United States Constitution and the Illinois Constitution's proportionate penalties clause. The defendant's brief cites to authority that sets forth the basic principle that the eighth amendment prohibits cruel and unusual punishment (*Roper v. Simmons*, 543 U.S. 551 (2005), which sentenced a juvenile to death) and that the Illinois Constitution requires that all penalties shall be proportionate punishment for the offense (*People v. Leon Miller*, 202 Ill. 2d 328 (2002), which sentenced a juvenile to 50 years). However, the defendant does not provide any support for his contention that his sentence of 16 years is excessive such that it would be cruel and unusual punishment or that it is disproportionate to the offenses committed. The defendant merely points to the sentence itself and alleges that the mitigation factors should have resulted in a lesser sentence.

¶ 44    "A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument and research." *People v. Hood*, 210 Ill. App. 3d 743, 746 (1991). Accordingly, Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires that an appellant's brief contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Mere contentions, without citation to relevant authority or developed arguments, do not merit consideration on appeal. *In re Commitment of Moore*, 2023 IL App (5th) 170453, ¶ 73. As a result of defendant's failure to cite any relevant authority which would suggest his sentence under these circumstances is excessive or constitutes cruel and unusual punishment, defendant has forfeited this argument.

16

¶ 45                      III. CONCLUSION

¶ 46     For the foregoing reasons, we affirm the St. Clair County trial court's sentence.


¶ 47     Affirmed.