NOTICE
Decision filed 11/19/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 190531-U

NO. 5-19-0531

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 18-CF-259 |
| | ) | |
| TONY TOWNSEND, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The defendant's sentence is affirmed where the trial court considered all factors in aggravation and mitigation, including the mitigating factors associated with youth, did not consider inappropriate factors in aggravation, and the trial court's discretionary determination that the defendant's sentences should run consecutively was not an abuse of discretion.

¶ 2    On February 23, 2018, the defendant, Tony Townsend, was charged by information with the offense of aggravated battery involving discharge of a firearm in violation of section 12-3.05(e)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-3.05(e)(1) (West 2014)). At the time of the offense, the defendant was 16 years old. A jury trial was held over several days in July and August 2019. A jury convicted the defendant of aggravated battery as charged. On October 28, 2019, the defendant was sentenced to a term of 22 years' imprisonment in the Illinois Department of Corrections (IDOC), to run consecutive to a sentence of 10 years' imprisonment

1

imposed in an unrelated case, St. Clair County case No. 15-CF-787, for armed robbery and aggravated vehicular hijacking.

¶ 3     On direct appeal the defendant argues that (1) the trial court misapplied the juvenile sentencing statute by considering factors attendant to the defendant's youth and immaturity in aggravation, not just mitigation; (2) his 22-year sentence is excessive and an abuse of discretion where the trial court considered deterrence as a factor in aggravation, and disregarded his rehabilitative potential; and (3) the trial court abused its discretion when it ordered his 22-year sentence in this case run consecutively to his 10-year sentence in case No. 15-CF-787. For the following reasons, we affirm the defendant's sentence.

¶ 4                                              I. BACKGROUND

¶ 5     The State charged the defendant with one count of aggravated battery involving discharge of a firearm by indictment filed on February 23, 2018. The indictment alleged that on June 23, 2015, in violation of section 12-3.05(e)(1) of the Code (*id.*), the defendant knowingly, and by means of discharging a firearm, caused an injury to Dimitri Wilbourn in that the defendant shot Wilbourn in the leg with a handgun. At the time of the offense, the defendant was 16 years of age. A jury trial was conducted on several days in July and August of 2019, with the jury finding the defendant guilty on August 9, 2019, of aggravated battery with a firearm after the State submitted an accountability instruction. The matter was scheduled for a sentencing hearing on October 2, 2019, and an updated presentence investigation report (PSI) was ordered to be prepared.

¶ 6     On August 15, 2019, the State filed its notice for sentencing juvenile as adult, or in the alternative, request for a hearing pursuant to section 5-130(1)(c)(ii) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-130(1)(c)(ii) (West 2014)). In its notice, the State alleged that the underlying charge was properly filed in adult court pursuant to section 5-130(1)(a) of the Act (*id.*

§ 5-130(1)(a)), which excludes from juvenile jurisdiction any minor who "at the time of an offense was at least 16 years of age and who is charged with: *** (iii) aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1) *** of Section 12-3.05 where the minor personally discharged a firearm as defined in Section 2-15.5 of the [Code]***." The State further alleged that the defendant's recorded confession clearly established that he personally discharged a firearm, despite the jury finding the defendant guilty of aggravated battery with a jury instruction on accountability. On October 2, 2019, the trial court heard arguments from counsel and granted the State's request to proceed with adult sentencing over the defendant's objection. The sentencing hearing was continued by agreement until October 28, 2019.

¶ 7    At the sentencing hearing, the trial court considered the PSI completed in this matter, as well as the social history prepared in the defendant's prior case No. 15-CF-787. During the sentencing hearing, the defendant, Tanya Townsend, and Ikeisha Johnson testified. The trial court heard arguments from counsel regarding sentencing recommendations, as well as factors in aggravation and mitigation. The defendant gave a brief statement of allocution. The State argued for a maximum sentence of 30 years' imprisonment and that the trial court impose discretionary consecutive sentencing. Defense counsel requested a minimum sentence of six years' imprisonment be imposed and that the defendant's sentences run concurrently.

¶ 8    Defense counsel acknowledged that the events of this case, along with the events charged in case No. 15-CF-787 and a third charged case, all occurred on the same day. Defense counsel stated that the charge involved in case No. 15-CF-787 occurred first, the charge in the instant matter was the "middle event" of the day, and that the defendant was awaiting trial on the third charge. The trial court and defense counsel addressed the defendant's prior juvenile and adult

3

charges that were dismissed and the pending charges, with the trial court clarifying that it did not consider those charges in fashioning a sentence.

¶ 9    The trial court continued by addressing the defendant's youth, stating that it was aware of the development of the brain, especially in male brains, and the frontal lobe that controls decision making. The trial court stated that it was "acutely and, in fact, very much in tune with what do we do with juveniles and—and that they are not the same and their actions are not the same as those committed by a twenty-five-year-old or a thirty-five-year-old or a fifty-eight-year old." The trial court then stated:

> "And maybe a sixteen-year-old doesn't know better. And if they don't know better, if a sixteen-year-old doesn't know that you can't commit an armed robbery, you can't commit an aggravated vehicular hijacking, if a sixteen-year-old doesn't realize that you can't shoot a gun at another human being or when there's a house around or when you're throwing rounds in a direction of a house or a dwelling or of anywhere and that people could die, it boggles the mind that a sixteen-year-old wouldn't be able to figure that out."

¶ 10   The trial court stated that it would consider each of the factors contained in section 5-4.5-105 of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-4.5-105 (West 2014)), relating to sentencing individuals under the age of 18 at the time of the commission of the offense. After considering the factors attendant to youth, the trial court turned its attention to the factors in aggravation and mitigation contained in sections 5-5-3.1 and 5-5-3.2 of the Code of Corrections (*id.* §§ 5-5-3.1, 5-5-3.2), stating that it had considered the arguments of counsel, the PSI, its knowledge of the case, and everything it knew about the defendant's character and background. First addressing the statutory factors in mitigation, the trial court considered the defendant's youth as a factor in mitigation. Further, the trial court stated that it could not "conclude

4

that his criminal con—obviously can't conclude his conduct neither caused nor threatened serious physical harm, although it certainly threatened a lot worse physical harm than ultimately the victim had in this case." Accordingly, the trial court found that factor was not appropriate to consider.

¶ 11    The trial court then focused its attention on the defendant's prior history of delinquency or criminal activity by stating:

> "To the extent that he has no history of prior delinquency or criminal activity or has led a law abiding life for a substantial period of time before the commission of this—or these—this crime, and the other crime he was sentenced on, I suppose there's an argument to be made on that. And I've considered it for what it's worth. I've discounted somewhat the prior criminality, and I'm again amazed that all this happens in a short period of time with somebody who had just turned sixteen years old a few months before these events."

Addressing the likelihood that the criminal conduct is a result of circumstances unlikely to recur, the trial court found:

> "I can't say that the criminal conduct is a result of circumstances unlikely to recur. I don't have that crystal ball, number one. But I don't see any—any evidence either way on that. I don't see that his character indicates that he is unlikely to commit another crime. Quite the contrary."

¶ 12    The trial court then stated that it did not see that the defendant would be particularly likely to comply with the terms of probation, conceding that probation was not a possible sentence in the case, but adding that it was not a factor in mitigation that the trial court could "safely rely upon today." Lastly, the trial court stated that it saw no proof that the defendant suffered from an intellectual disability, but it would "certainly again consider the youth" as a factor in mitigation.

¶ 13    The trial court then discussed the statutory factors in aggravation it considered. It agreed with the State that deterrence was a proper factor to consider stating: "And I think people have to be deterred and the word has to get out somehow that carrying guns around and shooting at people, throwing rounds carries with it some very serious consequences." The trial court also noted that the defendant's conduct caused or threatened serious harm.

¶ 14    The trial court then discussed discretionary consecutive sentencing. The trial court found the circumstances of the instant matter and the events of case No. 15-CF-787 were two distinct events that were not part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. According to the trial court, the two events were "totally different and totally unrelated crimes" and had "nothing to do with one another." The trial court again noted that the sentences were not mandatorily consecutive but rather permissive, quoting the statutory language. The trial court determined that consecutive sentences were appropriate stating the following:

> "That basis was argued by the State. That basis exists in the Court's mind irrespective of all the other mitigating factors that are present and all the other factors that are clearly present when we're dealing with sentencing a juvenile. The nature and circumstances of this offense, the history and character of the defendant that night and subsequently. And finally, does the public need to be protected? Based on what happened, based on taking a gun, based on throwing rounds, based on having earlier that same evening—or same day having committed the offenses of armed robbery and aggravated vehicular hijacking, it is clear that the public—and that a consecutive sentence imposed on [the defendant] is required to protect the public from further criminal conduct by him."

6

¶ 15    The trial court sentenced the defendant to a term of 22 years' incarceration, to run consecutive to the 10-year term of incarceration previously imposed in case No. 15-CF-787, with a 3-year term of mandatory supervised release. The trial court admonished the defendant of his appeal rights. The defendant filed his motion to reconsider sentence on November 25, 2019, which was denied by the trial court after hearing on the same date. This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, the defendant is only challenging his sentence. The defendant argues that the trial court's aggregate sentence of 32 years' incarceration was excessive, where the trial court misapplied the juvenile sentencing factors announced in *Miller v. Alabama*, 567 U.S. 460 (2012), and codified in section 5-4.5-105 of the Code of Corrections (730 ILCS 5/5-4.5-105 (West 2018)), when sentencing him. Further, the defendant argues that the trial court abused its discretion by imposing discretionary consecutive sentencing. The State maintains that the trial court did not abuse its discretion in sentencing the defendant.

¶ 18               A. Whether the Trial Court's Sentence was Excessive

¶ 19    The defendant argues that the defendant's aggregate 32-year sentence is excessive. The defendant's overarching argument is that the trial court's comments during the sentencing hearing demonstrated a failure to comply with the requirements of section 5-4.5-105 of the Code of Corrections (730 ILCS 5/5-4.5-105 (West 2018)). The defendant argues that the trial court considered improper aggravating factors and failed to apply or give appropriate weight to pertinent mitigating factors. As a result, the defendant requests that this court exercise its authority under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) to reduce his sentence or, alternatively, vacate the defendant's 22-year sentence and grant him a new sentencing hearing that complies with section 5-4.5-105(a). The defendant also asks that this court vacate the trial court's order

7

requiring the sentence to run consecutive to the defendant's 10-year sentence imposed in case No. 15-CF-787. The defendant's specific contentions of error will be addressed individually below.

¶ 20 To the extent that the defendant is raising issues of statutory construction in making his argument, our standard of review is *de novo*. *People v. Smith*, 2014 IL 115946, ¶ 21. Most of the defendant's contentions of error here, however, relate to the trial court's application of the statutory factors in aggravation and mitigation. An argument that the defendant would have received a lower sentence if the court had not erred in its application of the statute and, thus, erroneously considered statutory factors constitutes an excessive sentence argument. See *People v. Johnson*, 2019 IL 122956, ¶ 39. A reviewing court will not disturb a defendant's sentence absent an abuse of discretion by the trial court. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A sentence will be deemed an abuse of discretion where that sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense. *Id.*

¶ 21 The defendant was charged and sentenced for the offense of aggravated battery with a firearm, which is a Class X felony with a sentencing range from 6 to 30 years' imprisonment. 730 ILCS 5/5-4.5-25(a) (West 2014). The trial court sentenced the defendant to 22 years' imprisonment and found, pursuant to section 5-8-4(c)(1) of the Code of Corrections (*id.* § 5-8-4(c)(1)), that a consecutive term of imprisonment was necessary to protect the public, resulting in an aggregate sentence of 32 years' imprisonment in IDOC.

¶ 22 The Illinois Constitution mandates "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. When sentencing a defendant, the trial court must consider several statutory mitigating and aggravating factors. See 730 ILCS 5/5-5.3.1, 5-5-3.2 (West 2018). In *Miller*, 567 U.S. at 479, the United States Supreme Court discussed the proposition that young

8

adults are likely less criminally culpable than older adults due to their underdeveloped sense of responsibility, which leads to recklessness, impulsiveness, and susceptibility to outside influences. *Id.* at 471. *Miller* emphasized "that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Id.* at 472. Illinois codified the mitigating factors of youth in section 5-4.5-105 of the Code of Corrections (730 ILCS 5/5-4.5-105 (West 2018)), which lists additional mitigating factors the trial court must consider when sentencing an individual who was under the age of 18 at the time they committed the offense. See *People v. Merriweather*, 2022 IL App (4th) 210498, ¶ 31. The additional factors the trial court is to consider in mitigation based on the defendant's youth include:

"(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

9

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West 2018).

¶ 23　There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and thus, we review the trial court's sentencing decision with deference. *People v. Bowman*, 357 Ill. App. 3d 290, 202-04 (2005). The trial court is not required to expressly indicate its consideration of all mitigating factors and what weight each factor should be assigned when crafting a sentence (*People v. Kyse*, 220 Ill. App. 3d 971, 975 (1991)), and we presume the trial court considered all mitigating factors absent some affirmative indication to the contrary other than the sentence itself. *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 43. Not all mitigating factors apply to every case. *Merriweather*, 2022 IL App (4th) 210498, ¶ 31. When determining whether the trial court based the sentence on proper aggravating and mitigating factors, the reviewing court should consider the record as a whole, rather than focusing on a few words or statements by the trial court. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). The burden is on the defendant to affirmatively establish that the sentence was based on improper considerations. *Id.* (citing *People v. Conley*, 118 Ill. App. 3d 122, 133 (1983)).

¶ 24　At the outset, we recognize that the trial court explicitly addressed all nine *Miller* factors during the sentencing hearing. Prior to addressing each of the *Miller* factors individually, the trial court discussed the mitigating factors of youth and their logical underpinnings at length. The trial court specifically addressed its awareness of brain development, and its education in early childhood development and its long-term effects on the same. It evinced awareness of studies indicating that the adolescent brain does not completely form until the mid-twenties in some cases.

Further, it discussed the development of the frontal lobe, and how its underdevelopment in youth can contribute to criminality. The trial court specifically stated that juveniles and their actions are not the same as the actions of older individuals, and that "maybe a sixteen-year-old doesn't know better." The trial court acknowledged that the defendant, who was 16 years old at the time of the offense, should be sentenced differently than an adult, and affirmed its intent to do so. As such, many of the comments challenged by the defendant, in greater context, reflect that the trial court fully understood that a juvenile mind is different from that of an adult, but simply found that the certain circumstances in this case tempered against the mitigating nature of the defendant's juvenile status. We turn now to the defendant's arguments aimed at the trial court's consideration of each of the section 5-4.5-105(a) factors (730 ILCS 5/5-4.5-105(a) (West 2018)).

¶ 25                                    1. Age, Impetuosity, and Level of Maturity

¶ 26    Concerning the trial court's application of the first sentencing factor applicable to juvenile offenders, the defendant takes issue with the trial court's comments when considering the defendant's age, impetuosity, and level of maturity at the time of the offense. This factor includes the ability of the defendant to consider risks and consequences of behavior as well as the presence of any cognitive or developmental disability. The defendant argues that the trial court's comments that "there is a certain amount of that, but I haven't really seen a whole lot here to suggest to me that that is something that I can rely on to a great degree," indicated that the trial court—at best— gave the factor minimal weight. Further, the defendant argues that when the trial court stated that the defendant knew that "you can't shoot a gun at another human being" but "whether he had the impulse to control or stop it is another matter," coupled with its comment that "I haven't really seen a whole lot" with respect to the factor indicates that the trial court failed to consider the

11

evidence as mitigating. Finally, the defendant argues that the trial court failed to consider the defendant's evolving maturity, which he argues was clearly mitigating.

¶ 27    It is clear, when considering the record as a whole, that in considering this factor the trial court found some but not "a whole lot" of evidence that it would consider mitigating regarding the defendant. The trial court found that the defendant knew that a person cannot shoot a gun at another human being, or in a residential neighborhood, and that people could die based on such an action. The trial court acknowledged that the defendant may have had poor impulse control. The trial court acknowledged that the fact that the defendant was a 16-year-old high school freshman would "raise normally a red flag," however, it did not "see any evidence of the cognitive developments other than what is normally present." It is clear from its comments during sentencing that the trial court believed that this defendant, despite his age, knew that his actions were wrong, did not suffer from cognitive impairment, and may have acted impulsively on the date in question due in some part to his age, and considered the same in fashioning its sentence. While the trial court did not specifically acknowledge the defendant's maturation during his time incarcerated awaiting trial, the defendant does not point to any evidence of record that the trial court failed to consider the evidence presented by the defendant's witness, Ikeisha Johnson.

¶ 28    The trial court carefully considered the first factor and explained how it believed the defendant's circumstances applied and the reasons why it weighed the factor as it did. The fact that the trial court afforded the factor less weight than the defendant believed it should have carried does not constitute a failure to comply with the law, nor can we find any abuse of discretion.

¶ 29                    2. Outside Pressure or Negative Influences

¶ 30    The defendant argues that the trial court performed a cursory analysis of the second factor and failed to consider "significant mitigating evidence of negative peer pressure, and negative peer

12

and familial influences." The defendant claims that the fact that the defendant did not know the victim prior to shooting a gun at him, and that the victim had been "beefing" with the defendant's friend, makes "crystal clear that [the defendant's] involvement in this offense was peer-related."

¶ 31    The trial court discussed this factor, commenting that the defendant "certainly might" have been subject to outside pressure, and continued by acknowledging that it also had evidence that the defendant was "an accused block boss and somebody who has leadership abilities ***. So, I don't know about the outside pressure or peer pressure. It might even be the other way around." The defendant argues that these comments by the trial court indicate that it failed to consider important mitigating evidence and the evidence it did consider was viewed as aggravating. Again, we disagree.

¶ 32    The trial court's comments evince a careful consideration of the evidence presented. The trial court did not consider the fact that the defendant may have been influenced, to some extent, by his peers in aggravation. The trial court acknowledged and weighed the evidence as it related to this factor, giving weight in accordance with its findings.

¶ 33    The trial court noted the defendant had engaged in an armed robbery, aggravated vehicular hijacking, and then an aggravated battery with discharge of a firearm all within a 24-hour block of time. The trial court acknowledged that such a run of criminality on a single day lent itself, in some respects, to the defense's argument. The trial court noted that outside pressure certainly "might" be the case. The trial court heard the evidence that the defendant did not even know the victim that he was "throwing rounds" at prior to the offense and was in the backseat of the vehicle with his peers, who were "beefing" with the victim. The trial court also heard evidence that the defendant assumed a leadership role amongst his friends who looked up to him, and that he did well in school. The trial court specifically noted that it considered the defendant's violations of the Inmate

13

Discipline Code contained in the PSI, which indicated that the defendant received a 30-day partial privilege loss for tampering with a wristband and "attempting to be or being a block boss," which the trial court weighed as demonstrative of leadership skills.

¶ 34     As to the defendant's familial influences, the trial court heard similar conflicting evidence. The defendant and his mother were charged as codefendants with attempting to influence a witness in the defendant's case. The defendant's father had been, for the most part, uninvolved in his life and was incarcerated at the time of the defendant's sentencing hearing. The trial court also heard from the defendant's aunt, that "[h]e grew up in a good household," knew right from wrong, and that he always had food, clothing, and shelter. The trial court, however, still found that the defendant was subjected to some parental neglect, and thus, considered the same in mitigation. While the defendant argues that the trial court failed to consider the fact that the defendant had a son and made a statement in allocution that he wished to be there for his son, there is no evidence in the record that the trial court did not consider the defendant's parental situation.

¶ 35     The evidence before the trial court cut both ways regarding how much outside influence affected the defendant's actions on the day that he engaged in a series of gun-related crimes. The trial court's comments in weighing this factor did not indicate that the trial court ignored mitigating evidence. Rather, the trial court carefully weighed the evidence before it and determined that it did not afford much weight in determining a reduction in sentence. The trial specifically commented that the evidence lent itself to the defendant's argument and that peer pressure likely had some influence over the defendant's actions that day. The fact that the trial court also weighed the evidence of the defendant's continued violations of the Inmate Discipline Code and leadership skills in determining the weight of this factor does not illustrate a lack of compliance with the law nor does it constitute an abuse of discretion.

14

¶ 36        3. Family, Home Environment, Educational and Social Background

¶ 37    The defendant argues the trial court correctly found that this factor applied but failed to give the factor sufficient weight. The trial court considered that the defendant's father had not been a meaningful part of the defendant's life and found that the existence of some parental neglect was apparent and mitigating to some degree. The defendant argues, however, that the trial court failed to consider how the defendant's unstable home environment contributed to the offense in mitigation. The trial court heard evidence and acknowledged some parental neglect in mitigation, but also heard evidence that the defendant had been raised in a good home and was never in need.

¶ 38    The defendant next argues that the trial court failed to consider the mitigating fact that the defendant became a father during his incarceration and gave a statement in allocution. The trial court specifically mentioned the defendant's statement in allocution specifically acknowledged that the defendant's father was not a meaningful part of his life. The trial court referenced the defendant's statement in allocution again when it stated: "Any other information the court finds relevant and reliable, including an expression of remorse, which I absolutely find here, if appropriate. And it was." Thus, it is clear from the record that the trial court considered these facts in fashioning its sentence.

¶ 39    Finally, the defendant argues that the trial court failed to consider the defendant's age, given that at the time of the offense, he was a freshman in high school as mitigating because there was no evidence of cognitive delays. The defendant argues that the trial court's ability to assess this factor was hampered by the fact that it did not have enough information, absent the participation of the defendant's parents and absent the provision of services while incarcerated, to properly determine the defendant's cognitive development.

15

¶ 40　The trial court, however, had information before it regarding the defendant's performance in school until his arrest and his behavior and ability to participate in proceedings before the trial court. The defendant did not present evidence, which could have been presented through various means absent the live testimony of his mother, indicating that he suffered from cognitive impairment. The trial court was in the best position to observe the defendant's demeanor and ability to participate in the proceedings. Further, the trial court heard from Tanya Townsend that the defendant did well in school and that she regularly checked on his progress with the school. There was no evidence as to whether the defendant was held back in school prior to beginning or at some other point in his academic career. The trial court did not have evidence before it of a cognitive delay, absent what is normally present in a juvenile, and we find no fault in the trial court's commentary in that regard.

¶ 41　　　4. Potential for Rehabilitation or Evidence of Rehabilitation

¶ 42　The defendant argues that the trial court disregarded "significant evidence" of rehabilitation and that the substantial sentence combined with the trial court's minimal comments and "cursory analysis" illustrates a lack of compliance with the juvenile sentencing statute. The trial court's comments, however, indicate that it struggled with this factor, giving it thought and attention. The trial court stated, "It's tough to say here—We have a sixteen-year-old, now a twenty-one-year-old man. I'm reading between these reports and what's going on in jail though, that I don't know if that's particularly persuasive with me here." While the defendant argues that the record evinces his significant rehabilitative potential, we cannot find that the trial court was presented with significant evidence of rehabilitation, as the defendant maintains.

¶ 43　The trial court repeatedly acknowledged the defendant's age, which lends itself to rehabilitative potential. See *Miller*, 567 U.S. at 471 (children have "greater prospects for reform"

than adults). The trial court here, however, also contended with the fact that the defendant received several "write-ups" while housed in juvenile detention, and after being transferred to an adult jail, he was disciplined for battery, attempting to "change, alter, or tamper with [a] wristband," and "attempting to be or being a block boss." As such, the trial court was not persuaded that the defendant had significant rehabilitative potential. See *People v. Suggs*, 2020 IL App (2d) 170632, ¶ 41 (that the defendant was disciplined for numerous offenses while incarcerated awaiting trial and sentencing supported the finding that he lacked rehabilitative potential). The trial court considered that evidence in determining that the defendant had not been rehabilitated at the time of sentencing, and that the same evidence reflected on the character of the defendant. We cannot find that the trial court's determinations reflected a lack of compliance with the law or an abuse of discretion.

¶ 44                         5. Circumstances of the Offense

¶ 45    The defendant argues that the trial court's review of this factor was improper where it considered the circumstances of the offense in aggravation and failed to acknowledge the transient immaturity of youth as a contributing factor. We find that the trial court considered the circumstances of the offense, finding the defendant's actions to be serious, extremely dangerous, and that they placed the victim and those in his proximity in life-threatening circumstances.

¶ 46    As previously stated, the trial court spoke at length, prior to beginning a discussion of the specific section 5-4.5-105(a) (730 ILCS 5/5-4.5-105(a) (West 2018)) factors, about the effect of adolescent brain development on criminality and acknowledged the necessity of considering the characteristics of youth in sentencing. The trial court again acknowledged the necessity to treat a child as a child in sentencing and not as a "mini-adult" prior to pronouncing its sentence. We

17

cannot find, on this record as a whole, that the trial court failed to consider the transient immaturity of youth as a contributing factor in this case.

¶ 47    We also find no fault with the trial court's comments indicating that the trial court found the circumstances of the offense to be aggravating. The circumstances of the offense, along with the defendant's role, must be considered under the Illinois Constitution in formulating a sentence (Ill. Const. 1970, art. I, § 11). The trial court's consideration of the circumstances of the offense is not limited to juvenile offenders. The trial court is not prohibited from considering the circumstances of the offense in aggravation. *Merriweather*, 2022 IL App (4th) 210498, ¶¶ 34-35. Further, nothing in section 5-4.5-105(a) prohibited the trial court from considering the circumstances of the offense, or the defendant's degree of participation in the offense, as aggravating if the evidence supported that characterization. See *id.* ¶ 35; see also *People v. Paige*, 2023 IL App (1st) 220925-U, ¶ 42.

¶ 48    6. Degree of Participation, Specific Role in the Offense, and Level of Planning

¶ 49    The defendant argues that the trial court's comments show that it improperly considered this factor in aggravation and failed to consider the defendant's role in the offense. The defendant points to the trial court's comment that the defendant's role in the offense was direct, including a level of planning by the defendant before the offense. The trial court further comments on the defendant's statement to police about "beefing" and acknowledged that while the plan was brief, stupid, and dangerous, there was still some planning involved. The defendant argues that the State presented no evidence of the defendant's role in planning the offense.

¶ 50    We disagree that the trial court's comments indicate either that it completely disregarded this factor in mitigation or indicated that it was solely considered in aggravation. As previously discussed, the trial court repeatedly discussed the mitigating characteristics of youth throughout

18

its pronouncement and noted specifically in discussing this factor that there was a plan, although it was brief, and that it was impetuous. We do note that, as stated above, the defendant's role in the offense must be considered pursuant to our constitution (Ill. Const. 1970, art. I, § 11). While the legislature required consideration of this factor in mitigation when sentencing young offenders, that does not mean that the facts and circumstances will be mitigating. If the defendant were to have a high degree of participation in the offense, been the primary actor, and planned an attack for months in advance, such evidence would not be mitigating, and consideration of the same in aggravation would not be inappropriate.

¶ 51    Here, there was no direct evidence that the defendant planned the shooting long before the offense occurred, which the trial court acknowledged. We agree that the evidence that the defendant did not know the victim prior to shooting at him, and that it was his friends in the vehicle that had a "beef" with the victim, both indicate that without the presence of his friends, the defendant very likely would not have shot at this victim. The defendant did, however, throughout the day, embark on a crime spree where the defendant used a firearm to steal the vehicle that was used in the shooting; that he was a leader amongst his peers; that he personally decided to shoot a weapon; and, that he had fired four shots at the victim. The defendant further stated that there was an argument later about one of the participants in the shooting only firing one shot. Thus, the trial court could have inferred that, not only was the defendant's participation in the offense significant, but he was also involved in the "brief" planning and had assumed a leadership role. See *In re Gregory G.*, 396 Ill. App. 3d 923, 929 (2009). The defendant was a direct participant in the offense, personally shooting a gun out the sunroof of a vehicle stolen at gunpoint earlier that day. While the trial court acknowledged that whatever plan that occurred was brief and impetuous, it nonetheless found the defendant's direct involvement and role in the offense lacked significant

19

mitigating qualities. We cannot find that the trial court's analysis indicated noncompliance with the law or an abuse of discretion.

¶ 52                          7. Ability to Meaningfully Participate in Defense

¶ 53    The defendant argues that the trial court's comment indicates that it "may have considered this factor as aggravating," based on its comments relating to the defendant's recorded telephone calls with his mother for which both were charged with attempted witness tampering. The trial court found that the defendant was clearly able to participate in his own defense, "[m]ore than clearly based on what I heard in the tapes." Further, the defendant argues that the trial court failed to consider the mitigating fact that the defendant was not able to be in contact with either of his parents since both were incarcerated at the time of his sentencing hearing.

¶ 54    The defendant does not explain how the inability to be in contact with his parents was mitigating as it relates to this factor and this court will not speculate. The defendant was 20 years old at the time of sentencing and represented by counsel. The trial court was required to consider the defendant's ability to assist in his own defense, and the trial court did so, acknowledging the defendant's apparent attempts at witness tampering. The trial court heard the defendant's jail telephone calls which were introduced as evidence during his trial. Such evidence could properly be considered in fashioning the defendant's sentence, as prior misconduct for which the defendant was convicted is relevant to a determination of a proper sentence where it bears on the likelihood or unlikelihood that the defendant would commit other offenses. As relevant to this factor, however, the trial court considered the evidence as a fact to be weighed in determining the defendant's ability to participate in his defense. The trial court found, based partially on the defendant's ability to assess the evidence against him and plan and take steps to tamper with the same to his own benefit, to be indicative of his ability to participate in his defense. The trial court's

20

consideration of this factor does not indicate a lack of compliance with the law nor an abuse of discretion.

¶ 55                                8. Prior Juvenile or Criminal History

¶ 56    The defendant argues that the trial court's comments and the defendant's sentence show that the trial court weighed the defendant's one day of criminal activity over the defendant's 16 years of law-abiding behavior. The trial court commented that it considered the defendant's prior criminal history "for what it's worth." The trial court acknowledged that "[t]here wasn't much there," adding that there was "a little bit there." The trial court considered the defendant's minimal prior criminal history while also noting that the defendant had used a firearm to commit serious crimes in a 24-hour period.

¶ 57    While this court agrees that the lack of significant criminal history is an important mitigating factor, the trial court here clearly considered the defendant's lack of criminal history while acknowledging the serious offenses committed by the defendant in a short period of time. It again considered the defendant's lack of criminal history while reviewing the factors in aggravation and mitigation contained in section 5-5-3.1 (730 ILCS 5/5-5-3.1 (West 2018)). The trial court noted the defendant's lack of prior delinquency or criminal history and that he had led a law-abiding life for a substantial period of time before the commission of the present crimes. The trial court commented that it had "discounted somewhat the prior criminality, and I'm again amazed that all this happens in a short period of time with somebody who had just turned sixteen years old a few months before these events." The trial court specifically stated that it had discounted the defendant's sentence based on a lack of prior criminal history, and thus, it is clear that it considered the lack of prior criminal history in mitigation.

21

¶ 58    The trial court completed its oral pronouncement by endorsing the legislature's requirement that the additional mitigating circumstances for juvenile offenders were necessary in sentencing an individual under the age of 18, acknowledging that "we can't consider [the defendant] a mini-adult. *** And I'm not looking at it that way." Much of the defendant's argument regarding the section 5-4.5-105(a) factors assert that the trial court should have given more weight to each factor. The trial court, however, addressed each factor and explained why it found some of the factors to provide little mitigation based on the individual characteristics of the defendant and the circumstances of this case. This court will not reweigh the evidence or substitute our judgment for that of the trial court. A reviewing court will not find a sentence improper merely because it would have weighed the factors differently. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000).

¶ 59    The trial court followed the law and considered the defendant's youth at the time of the offense and the mitigating factors implicating the characteristics of youth and imposed a discretionary sentence of 22 years' imprisonment; a sentence that, while significant, was eight years below the maximum the trial court could have imposed. The defendant committed a serious crime, and we cannot find that the sentence varied greatly with the spirit and purpose of the law or was manifestly disproportionate to the nature of the offense. Accordingly, we find the defendant's sentence is not excessive and the trial court did not abuse its discretion in sentencing the defendant.

¶ 60                            B. Deterrence in Aggravation

¶ 61    The defendant next argues that his 22-year sentence is excessive where the trial court considered deterrence as a factor in aggravation. The defendant cites *People v. McKinley*, 2020 IL App (1st) 191907, ¶ 89, for the proposition that deterrence does not necessarily apply to juvenile sentences. *McKinley* relied on *Montgomery v. Louisiana*, 577 U.S. 190, 207 (2016), which stated

22

that "deterrence is diminished in juvenile sentencing because juveniles' recklessness, immaturity, and impetuosity make them less likely to consider possible punishment." (Internal quotation marks omitted.) *McKinley*, 2020 IL App (1st) 191908, ¶ 89. The defendant also cites *People v. Haynie*, 2020 IL App (1st) 172511, for the proposition that a trial court's focus on deterrence is incongruous with *Miller*'s concerns regarding the sentencing of juvenile defendants, where the same characteristics of immaturity, recklessness, and impetuosity in juveniles "make them less likely to consider potential punishment." (Internal quotation marks omitted.) *Haynie*, 2020 IL App (1st) 172311, ¶ 34.

¶ 62    After briefing in this matter, both parties requested to supplement their briefs with additional authority, which this court granted. The defendant points to *People v. Hill*, 2022 IL App (1st) 171739-B, which held that the trial court gave inadequate consideration to expert behavioral testimony regarding Hill's susceptibility to pressure from older peers and his demonstrated rehabilitation during his 19-year incarceration. *Id.* ¶ 49. In doing so, the court commented:

> "We find deterrence an inapt consideration after reviewing [the expert witness's] testimony. Because Hill's 15-year-old behavior was based primarily on the impetuousness of youth, not considered adult decision-making, we fail to see how a lengthy sentence would deter similarly situated juveniles or adults capable of higher-order cost-benefit analyses of their decisions." *Id.*

The *Hill* court acknowledged that deterrence is a proper sentencing consideration, but found that, based on the expert witness testimony in that case, the sentencing court placed excessive weight on juvenile deterrence. *Id.* ¶¶ 47-48. To the extent that the *Hill* court's commentary could be considered as a bar to consideration of deterrence at all when sentencing a juvenile offender, we disagree.

23

¶ 63    The State requests this court to consider *People v. Smith*, 2022 IL App (4th) 200666. In *Smith*, the defendant argued that the sentencing court cannot, as a matter of law, consider the aggravating factor of deterrence in sentencing a person who committed the offense as a juvenile. *Id.* ¶ 22. The *Smith* court held that sentencing courts could consider the deterrence of others in imposing a discretionary sentence on a juvenile offender. *Id.* ¶ 30; see also *People v. Diaz*, 2024 IL App (1st) 22033-U, ¶ 30 (though deterrence is diminished in juvenile sentencing, it does not follow that deterrence may not be considered at all); *People v. Lee*, 2023 IL App (1st) 221565-U, ¶ 45 (disagreeing that deterrence is an invalid factor which a court cannot consider when sentencing a juvenile offender); *People v. Gomez*, 2023 IL App (1st) 220810-U, ¶ 31 (finding no error in the sentencing court's comments regarding deterrence). As we find that the law is clear that a sentencing court is not foreclosed from considering deterrence as a factor when sentencing a juvenile offender, the trial court's consideration here was not an abuse of discretion.

¶ 64    The defendant argues, in the alternative, that even if the trial court can consider deterrence as an aggravating factor in sentencing a juvenile, the trial court erred in doing so here given the defendant's lack of criminal history and the trial court's disregard of substantial mitigating evidence. We have previously addressed the trial court's consideration of the available evidence regarding the defendant's criminal history and rehabilitative potential. As discussed previously, we disagree with the defendant's contention that the trial court improperly considered the seriousness of the offense or the defendant's rehabilitative potential and do not find that under the facts present here, the trial gave excessive weight to deterrence of others. As such, we cannot find that the trial court abused its discretion.

24

¶ 65                    C. Discretionary Consecutive Sentencing

¶ 66    Finally, the defendant argues that the trial court abused its discretion when it ordered the defendant's 22-year sentence to run consecutively to his 10-year sentence in case No. 15-CF-787. The defendant argues that the record does not support the trial court's finding that a consecutive sentence for aggravated battery was necessary to protect the public.

¶ 67    The Code of Corrections permits the trial court to impose consecutive sentences where, "having regard to the nature and circumstances of the offense and the history and character of the defendant, it is the opinion of the court that consecutive sentences are required to protect the public ***, the basis for which the court shall set forth in the record." 730 ILCS 5/5-8-4(c)(1) (West 2018). "The record must show that the trial court concluded that consecutive terms were necessary to protect the public." *People v. Buckner*, 2013 IL App (2d) 130083, ¶ 36. "Because the trial court is in the best position to consider a defendant's credibility, demeanor, general moral character, mentality, social environment, and habits, the trial court's decision to impose consecutive, rather than concurrent, sentences for multiple crimes will not be reversed on appeal absent an abuse of discretion." (Internal quotation marks omitted.) *People v. Couch*, 387 Ill. App. 3d 437, 445 (2008). An abuse of discretion occurs when the record does not show the trial court considered mitigating factors, including a defendant's potential for rehabilitation, and does not support the trial court's determination that consecutive sentences were necessary to protect the public. *Buckner*, 2013 IL App (2d) 130083, ¶ 36 (citing *People v. O'Neal*, 125 Ill. 2d 291, 298-301 (1988)).

¶ 68    The defendant contends that the record does not support the finding that consecutive sentences were necessary to protect the public where (1) his criminal history occurred over the span of one day, and (2) his youth and rehabilitative potential were not considered fully by the trial court. The defendant also argues that discretionary consecutive sentences "should be imposed

sparingly" and are "rarely appropriate," citing *People v. Gray*, 121 Ill. App. 3d 867, 873 (1984), and *O'Neal*, 125 Ill. 2d at 298.

¶ 69    The trial court held that "irrespective of all the other mitigating factors that are present and all the other factors that are clearly present when we're dealing with sentencing a juvenile," the nature and circumstances of the offense and the character of the defendant, both on the day that he committed the offense and subsequently, qualified the offense for discretionary consecutive sentencing. The trial court repeatedly expressed its opinion that the seriousness of the crime justified a lengthy sentence. The trial court stated that the defendant engaged in "an amazingly serious run of crimes, all in a day. And again—between an armed robbery, an aggravated vehicular hijacking and then an aggravated battery with discharge of a firearm all in a twenty-four-hour block of time is mind boggling." The trial court clearly, throughout the sentencing hearing and again at the hearing on the defendant's motion to reconsider, considered the defendant's youth. Nonetheless, the trial court commented during the sentencing hearing that it did not "see that [the defendant's] character indicates that he is unlikely to commit another crime. Quite the contrary."

¶ 70    In considering whether the public needed to be protected from the defendant, the trial court stated:

> "Based on what happened, based on taking a gun, based on throwing rounds, based on having earlier that same evening—or same day having committed the offenses of armed robbery and aggravated vehicular hijacking, it is clear that the public—and that a consecutive sentence imposed on [the defendant] is required to protect the public from further criminal conduct from him."

¶ 71    The trial court specifically found consecutive sentences were necessary to protect the public. Our review then is whether that finding was "arbitrary, fanciful, or unreasonable." *People*

26

*v. Parker*, 2019 IL App (3d) 160455, ¶ 76. The trial court found the defendant's potential for rehabilitation to be poor, even considering his youth, due to his continued violations while incarcerated and awaiting trial in combination with the circumstances of the offense. When reviewing consecutive sentences, we must determine whether the trial court adequately considered mitigation on the issue of the defendant's future dangerousness to the public. Based upon our review of the record, we find that the trial court's determination that consecutive sentences were necessary to protect the public was not arbitrary, fanciful, or unreasonable. Therefore, the trial court did not abuse its discretion when finding consecutive sentences were necessary to protect the public.

¶ 72                              III. CONCLUSION

¶ 73     After having reviewed the evidence and the trial court's detailed findings at the defendant's sentencing hearing, we cannot hold that the trial court's consideration of the evidence in aggravation and mitigation was not considered in accordance with the law. We also cannot hold that the trial court's consideration of the evidence was arbitrary, fanciful, or unreasonable, such that no reasonable person would take its view. See *People v. Donoho*, 204 Ill. 2d 159, 182 (2003). As such, it did not abuse its discretion. We must therefore conclude that the defendant's sentence was proper because it was neither greatly at variance with the spirit and purpose of the law nor manifestly disproportionate to the nature of the offense. See *People v. Martin*, 2012 IL App (1st) 093506, ¶ 47.

¶ 74     For the foregoing reasons, we affirm the judgment of the trial court of St. Clair County.

¶ 75     Affirmed.